**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JEFFREY M. SCHUESLER,    ) NO. CV 01-2395 (Mc)
            )
     Plaintiff, )
            ) MEMORANDUM OF DECISION
    v.      ) AND ORDER IN A SOCIAL
            ) SECURITY CASE
JO ANNE B. BARNHART,    )
Commissioner of the    )
Social Security Administration, )
            )
     Defendant. )
_____)

   The plaintiff, JEFFREY M. SCHUESLER, filed the present action for review of a final determination of the Commissioner of Social Security (the "Commissioner") that he was not "without fault" in accepting an overpayment of Social Security benefits and, therefore, not entitled to a waiver of the overpayment.  For the reasons set forth below, the court finds that substantial evidence supports the Commissioner's decision.  The decision, therefore, is affirmed.

///

///

///

///

**BACKGROUND**

The plaintiff filed an application for disability insurance benefits ("DIB") under the Social Security Act (the "Act") on March 26, 1980.[1] [Administrative Record ("AR") 165-68.]  The plaintiff was found to be disabled and entitled to benefits.  The plaintiff returned to work in October or November, 1989 [AR 62, 344], and continued to work until June, 1990, when he was hospitalized for a kidney transplant [AR 38-41].  The plaintiff again returned to work in August, 1990, and continued to work until November, 1992, when he was laid off.  [AR 267, 336.]  The plaintiff then returned to work in April, 1993.  [AR 267.]  The Commissioner determined that the plaintiff was entitled to a nine-month trial work period.  20 C.F.R. § 404.1592.[2]  The Commissioner determined that the plaintiff's disability ceased in August, 1990, following the exhaustion of the nine-month trial work period.  The plaintiff, therefore, was entitled to benefits for the following month and two successive months. Beginning in December, 1990, the plaintiff was no longer eligible for benefits.  [AR  378.]  20 C.F.R. § 404.316(d).  However, the

---

[1] The plaintiff also was entitled to Supplemental Security Income ("SSI") disability benefits as well, but the SSI application is not part of the Administrative Record.  The plaintiff's SSI was terminated due to excess income when the plaintiff returned to work.  [AR 381.] There were small SSI overpayments which are not at issue.  [AR 184-85, 408-10.]

[2] The trial work period is a period during which the disabled individual can test his ability to work. During this period, the disabled individual may perform "services" in as many as nine months, but these months do not have to be consecutive.  Benefits continue during this period.  After the trial work period has ended the Commissioner evaluates the work performed during the trial work period to determine whether disability has ended at any time after the trial work period.  20 C.F.R. § 404.1592.

plaintiff, his wife, and two children, continued to receive benefits until they were notified of the plaintiff's ineligibility in June, 1993. [AR 380.]  The plaintiff then received a notice of overpayment advising that there was an overpayment of $26,740.60.  [AR 89.]  The plaintiff's wife was also overpaid in the amount of $4,818.00, but recovery of the overpayment was waived.  [AR 329.]  The plaintiff was overpaid an additional $6,643.00 for each of his two children, for whom he was the representative payee.  [AR 186.]  The plaintiff's request for waiver of recovery of his overpayment and the overpayment to his children was denied.  [AR 321-24; AR 331-32; AR 333-34.]  At the plaintiff's request, an administrative hearing was held before Administrative Law Judge Robert Filsinger.  On September 25, 1998, ALJ Filsinger issued a decision denying the waiver of recovery of the overpayment.  [AR 219-28.]  The plaintiff appealed to the Appeals Council which declined to review ALJ Filsinger's decision.  [AR 234-38.]  The plaintiff then filed the present action.  Because the Commissioner was unable to locate the claim file and the recording of the hearing, the matter was remanded to the Commissioner.  A second hearing was held before Administrative Law Judge Steven Chaffin (the "ALJ") on December 5, 2002.  [AR 30-37.]  On February 26, 2003, the ALJ filed a decision concluding that the plaintiff was not entitled to a waiver of recovery of the overpayment.  [AR 9-14.]  The decision of the ALJ stands as the final decision of the Commissioner.

Thereafter, the parties stipulated to reopen the present action. The plaintiff and the Commissioner have consented to proceed before a United States Magistrate Judge.  The parties have entered into a joint stipulation setting forth their arguments.

///

1  **STANDARDS OF REVIEW**

2       The court must sustain the findings of the Commissioner unless:

3  (a) they are not supported by substantial evidence in the record as a

4  whole; or (b) the Commissioner applied an improper legal standard.

5  See 42 U.S.C. 405(g); Gordon v. Secretary of Health and Human

6  Services, 803 F.2d 1071, 1072 (9th Cir. 1986); Albalos v. Sullivan,

7  907 F.2d 871, 873 (9th Cir. 1990).  Substantial evidence means "more

8  than a mere scintilla" but less than a preponderance.  Richardson v.

9  Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842

10 (1971); Desrosiers v. Secretary of Health and Human Services, 846 F.2d

11 573, 576 (9th Cir. 1988); McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th

12 Cir. 2000).  "Substantial evidence" is evidence a "reasonable mind

13 might accept as adequate to support a conclusion."  Richardson v.

14 Perales, 402 U.S. at 402; Gordon v. Secretary of Health and Human

15 Services, 803 F.2d at 1072; McCarthy v. Apfel, 221 F.3d at 1125.

16      This court must review the record as a whole and consider adverse

17 as well as supporting evidence.  See Green v. Heckler, 803 F.2d 528,

18 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than

19 one rational interpretation, the court must sustain the Commissioner's

20 decision.  See Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir.

21 1984).

22  **RECOVERY OF OVERPAYMENTS**

23      The Social Security Act provides that "there shall be no

24 adjustment of payments to, or recovery by the United States from, any

25 person who is without fault" in creating an overpayment of Title II

26 benefits provided that "such adjustment or recovery would defeat the

27 purpose" of Title II or "would be against equity and good conscience."

28 42 U.S.C. § 404(b); See also 20 C.F.R. § 404.506(a).

In determining whether an overpaid individual is "without fault," the Commissioner considers "all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual has."  What constitutes fault depends upon whether the incorrect payment resulted from:

a)   An incorrect statement made by the individual which he or she knew or should have known was incorrect; or

b)   Failure to furnish information which he or she knew or should have known was material; or

c)   Acceptance of a payment which he or she knew "or could have been expected to know was incorrect."  20 C.F.R. § 404.507.

Adjustment or recovery will defeat the purpose of Title II in situations where the person from whom recovery is sought "needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses."  20 C.F.R. § 404.508.  "Defeat the purpose" of Title II, generally means "to deprive a person of income required for ordinary and necessary living expenses."  20 C.F.R. § 404.508.

On the other hand, an overpaid individual's financial situation, is not material to a finding that recovery of an overpayment would be "against equity and good conscience."  Recovery of an overpayment would be "against equity and good conscience," for example, if the overpaid individual:

a)   Changed his or her position for the worse or relinquished a valuable right because of reliance upon a notice that a payment would be made or because of the overpayment itself; or

- 5 -

1       b)    Was living in a separate household from the overpaid

2             individual at the time of the overpayment and did not

3             receive the overpayment.  20 C.F.R. § 404.509.

4       An individual is "deemed 'without fault'" in entitlement

5  overpayment situations where the individual accepts an overpayment

6  because of reliance on erroneous information from an official source

7  within the Social Security Administration "with respect to the

8  interpretation of a pertinent provision of the Social Security Act or

9  regulations pertaining thereto." 20 C.F.R. § 404.510a.  However,

10 "[a]lthough the Administration may have been at fault in making the

11 overpayment, that fact does not relieve the overpaid individual or any

12 other individual from whom the Administration seeks to recover the

13 overpayment from liability for repayment if such individual is not

14 without fault."  20 C.F.R. § 404.507.

15                          **FINDINGS OF THE ALJ**

16      The ALJ found that the plaintiff was not entitled to disability

17 insurance benefits from December, 1990, through November, 1992, and

18 for the months of April, 1993, and May, 1993.  The ALJ found that the

19 plaintiff was overpaid in the amount of $26,740.60.  The ALJ further

20 found that the plaintiff's children were also not eligible for

21 benefits received on their behalf by their father, the plaintiff, for

22 the same period.  As representative payee for the children, the

23 plaintiff was overpaid an additional $13,286.00 ($6,643.00 for each of

24 two children).[3]  The ALJ determined that the plaintiff was not without

25 ///

26

27

28      [3] There is no dispute concerning the existence of the overpayment
   or the amount of the overpayment.

1  fault in accepting the overpayments.  Accordingly, recovery of the
2  overpayment was not waived.  [AR 13.]

3  **THE PLAINTIFF'S CONTENTIONS**

4       The plaintiff contends that the ALJ applied an incorrect legal
5  standard in determining that the plaintiff was not without fault.

6  **DISCUSSION**

7       The thrust of the plaintiff's argument is generally that he is
8  without fault because he timely reported his earnings, yet the
9  Commissioner failed properly and timely to cease his benefits.  [Joint
10 Stipulation at 7.]  Assuming that this is true, this does not
11 necessarily mean that the plaintiff is without fault.  Bad faith is
12 not a requirement to show fault [Morgan v. Finch, 423 F.2d 551, 553
13 (6th Cir. 1970); Center v. Schweiker, 704 F.2d 678, 680 (2nd Cir.
14 1983)], nor is it generally "presumed that a recipient is without
15 fault even if the agency initially caused the overpayment."  Lewin v.
16 Schweiker, 654 F.2d 631, 633 (9th Cir. 1981); 20 C.F.R. § 404.507.

17      However, the plaintiff contends that the plaintiff "should be
18 expected to presume the correctness" of the Commissioner's actions.
19 [Joint Stipulation at 9.]  Whether the plaintiff is entitled to
20 presume the correctness of the Commissioner's actions–i.e., whether
21 the plaintiff is without fault–depends, as the plaintiff urges, upon
22 "the claimant's story in light of 'all pertinent circumstances,
23 including his age, intelligence, education, and physical and mental
24 condition.'"  [Joint Stipulation at 10, citing 10 C.F.R. § 404.507.

25      The plaintiff, at the time of receipt of the overpaid benefits
26 was twenty-nine to thirty years old.  He had a college education, and
27 worked as an engineer in the aerospace industry.  [AR 55.]  There is
28 no doubt that the plaintiff has a very severe physical disability,

which required interruption of the plaintiff's trial work period for approximately two months to undergo and recover from a second kidney transplant surgery.  [AR 56.]  However, other than some minor accommodations made to him by his employer, the plaintiff, impairment notwithstanding, was able to return to work and continue working essentially uninterrupted thereafter, except when he was laid off from November, 1992, through March, 1993.  During the period of lay off, the plaintiff was reentitled to benefits.  [AR 62, 189.]  There is no indication of any mental deficiencies that played a role in the plaintiff's acceptance of the overpaid amounts.

Other pertinent circumstances are that the plaintiff reported his return to work at least by December, 1989, on a form entitled Statement for Redetermining Continuing Eligibility for Supplemental Security Income Payments.[4]  [AR 343-48.]  It is unknown whether the redetermination of eligibility resulted from a report of earnings initiated by the plaintiff or whether the earnings were reported on the redetermination form initiated by the Commissioner as part of the procedure that the Commissioner is required to follow to determine the plaintiff's continued eligibility for SSI.  20 C.F.R. § 416.204.

Shortly thereafter, on January 22, 1990, the plaintiff was sent a letter indicating that in June, 1990, his claim would be reviewed "since it appears your 9th month of trial work will end at that time according to information reported to us."  [AR 403.]

In June, 1990, the plaintiff completed a Work Activity Report. The plaintiff was asked to describe all his work activity since

_____

[4] On December 8, 1989, the plaintiff reported earnings for November and December, 1989.  [AR 344; see AR 38.]  However, the plaintiff apparently began working on October 19, 1989.  [AR 62, 68.]

1   November, 1979, his onset date.  The plaintiff reported that he worked

2   from November, 1989, until June, 1990, when his employment ended due

3   to disability.  [AR 38.]  Because at that time the plaintiff was no

4   longer working, despite the fact that he was almost at the end of the

5   trial work period, cessation would not have been appropriate.  [AR

6   41.]

7        On July 11, 1990, the plaintiff was asked to provide more

8   information concerning his work activity.  More specifically, the

9   plaintiff was asked to bring his pay stubs from work from October,

10  1989 through June, 1990.  [AR 351.]

11       The plaintiff provided this information on or about August 16,

12  1990.  [AR 353-62.]  In the meantime, however, on August 13, 1990, the

13  Social Security Administration wrote to the plaintiff advising him

14  that he worked at least eight months of the trial work period.

15  However, the letter also noted that the plaintiff was unable to

16  continue working.  The Administration again advised the plaintiff that

17  his claim would be reviewed from time to time to determine whether he

18  continued to be disabled.  The plaintiff was also informed that when

19  his claim was reviewed, he would be notified if there was any question

20  as to his continuing eligibility.  [AR 341-42.]  The plaintiff,

21  however, has claimed that he did not receive this letter.  [AR 271;

22  but see Joint Stipulation at 6.]

23       In the meantime, the plaintiff had apparently returned to work.

24  It is unclear exactly when this return to work was reported.  However,

25  it is clear that by November, 1990, the plaintiff reported at least

26  anticipated earnings for August, 1990.  [AR 381.]

27       In September, 1990, the plaintiff was advised that he had been

28  overpaid on his SSI for the period October, 1989, through August,

- 9 -

1   1990, due to his wages.  [AR 180-83.]  In November, 1990, the
2   plaintiff was advised that he was no longer eligible for SSI due to
3   his income which consisted of his Social Security payments and his
4   wages.  [AR 381.]

5       In February, 1991, the plaintiff was again contacted concerning
6   his continuing eligibility for SSI.  [AR 372.]  The plaintiff reported
7   that he was working, and he submitted his paystubs.  [AR 363-71.]

8       The Administration should have undertaken steps at that time to
9   stop the plaintiff's benefits.

10      In the meantime, in 1991 and 1992, the plaintiff fastidiously
11  reported his pay increases and other changes in his circumstances such
12  as the sale of his motorcycle.  [AR 372, 373, 375.]  Notably, in
13  April, 1991, the plaintiff also questioned an SSI overpayment of
14  $609.36 "when I have submitted all reportable changes on time."  [AR
15  372.]

16      In November, 1992, the plaintiff was laid off.  [AR 62, 267.]

17      In January, 1993, the Social Security Administration again sent a
18  letter to the plaintiff seeking information concerning his work
19  activity in 1991.  The plaintiff was also interviewed concerning his
20  continuing disability.  Again, the plaintiff acknowledged his past
21  work activity.  [AR 61; AR 51-60.]

22      At that time, the plaintiff also acknowledged that he understood
23  that the report would be used to determine whether benefits would
24  continue or be stopped.  [AR 58, 64.]  He also acknowledged his
25  understanding that the questionnaire was applicable both to his Social
26  Security and SSI claims.  [AR 58.]  The plaintiff further agreed to
27  notify Social Security if his condition improved or if he went to
28  work.  [Id.]

Coincidentally, the plaintiff was not working when this investigation took place, and therefore, again, termination of his ongoing benefits would have been improper.

The plaintiff then returned to work in April, 1993.  [AR 267.] However, unlike in 1991 and 1992, there is no letter in the record informing Social Security of that fact, although there is a copy of a calendar entry that he spoke with a Mr. Doster at Social Security to "report work."  [AR 50.]

In June, 1993, the plaintiff was finally advised that he was not eligible for benefits as of December, 1990, but that the benefits were reinstated for the period December, 1992 through March, 1993, the period of his lay off.  [AR 377-80.]

There is no definitive evidence to contradict the plaintiff's statements that he timely reported his earnings, nor is there evidence to contradict the plaintiff's statement that the Social Security Administration had all the information it needed to terminate his benefits prior to June, 1993.  However, this court notes that at various times when the Administration contacted the plaintiff, he was then unemployed and termination would not have been appropriate.

The plaintiff also points out that when the initial waiver denial issued, the Administration did not have all the information in its Social Security file.  The information was in the SSI file which was not locatable at the time of the initial determination, but it was subsequently found, corroborating the plaintiff's statements that he had reported his earnings.  However, the correctness of the initial determination is not the issue.  Rather, it is the correctness of the de novo decision of the ALJ.  [AR 10.]

///

1    The plaintiff also contends that no one ever explained to him the
2 difference between SSI and Social Security disability benefits and
3 that, therefore, he reasonably believed that information leading to
4 the termination of one benefit would not lead to the same result under
5 the other.  [Joint Stipulation at 11.]  The plaintiff himself actually
6 stated that, although he realized that his work activity would result
7 in termination of his SSI benefits, this did not "<u>necessarily</u>" affect
8 his Social Security disability benefits.  (Emphasis added.)  [AR 205.]
9 Clearly, however, the plaintiff was also aware that work activity
10 might have affected his Social Security benefits as well, and whether
11 he did or did not receive the August 13, 1990 letter, he was informed
12 about the anticipated expiration of his trial work period as early as
13 January, 1990.   The effect of work activity on his benefits was
14 reiterated to the plaintiff in January, 1993, when the plaintiff
15 signed a statement acknowledging that the work activity information
16 was applicable both to SSI and DIB.

17    The plaintiff's statement that no one ever explained to him the
18 difference between SSI and Social Security disability insurance
19 benefits is also somewhat contradicted by his contention that he
20 received misinformation from a Social Security employee.  He indicated
21 in a declaration dated July 3, 1998, that in October, 1990, he spoke
22 with a Ms. Malloy with whom he discussed "the continuation [sic] SSA
23 and/or SSI benefits, as well as the interaction between all these
24 issues."  However, the plaintiff also alleges that Ms. Malloy
25 confirmed that the benefits he was receiving was accurate.
26 Nevertheless, it is not clear exactly what information Ms. Malloy was
27 provided.  The plaintiff stated in his declaration:
28 ///

1   I questioned Ms. Malloy about the trial work period and
2   the fact that before the trial period had been completed, I
3   had to leave my job for a second kidney transplant, that I
4   was hospitalized for two weeks due to a bone infection, we
5   discussed the continuation of Medicare benefits, and the
6   continuation [sic] SSA and/or SSI benefits, as well as the
7   interaction between all these issues.

8   I asked Ms. Malloy to confirm that the benefits that I
9   was receiving were accurate.  Ms. Malloy's response was, not
10  to worry about it because, "you will receive benefits until
11  you received a Notice of Cessation which will come prior to
12  termination of benefits."[5]  As I believed that Ms. Malloy
13  knew her job and was giving me correct information, and I
14  knew that I had supplied all my employment information to
15  the Agency, I was confident that the benefits I was
16  receiving were correct, having something to do with my
17  continued Medicare benefits and/or the fact that my trial
18  work period had not been continuous.  [AR 297.]

19  If this conversation took place in October, 1990, as the
20  plaintiff states, and not while he was still unemployed, it is notable
21  that nowhere is there any indication that the plaintiff actually told
22  Ms. Malloy that he had returned to work.  The plaintiff only states
23  that he advised Ms. Malloy that he had to leave work prior to the
24  expiration of his trial work period due to his disability and that he
25  discussed with Ms. Malloy the continuation of the various benefits he

---

28  [5] In fact, the plaintiff did receive benefits until he was
    notified of the cessation of his disability.

was receiving.  The plaintiff goes on to state only that he knew he supplied all his employment information to the Agency, not that he told Ms. Malloy.

Assuming, however, that this conversation took place in October, 1990, as the plaintiff alleges, after the plaintiff returned to work in August, 1990, and even assuming, since the declaration does not so state, that the plaintiff told Ms. Malloy that after the hospitalization in June, 1990, he had, in fact, returned to work, there is nothing in the plaintiff's declaration that Ms. Malloy was aware that the plaintiff had nearly exhausted the nine-month trial work period when he was hospitalized.  The declaration, moreover, suggests that the plaintiff was well aware of the "expiration" of his trial work period.  More telling, however, is that the plaintiff never alleged that he received any erroneous information in either of his Requests for Waiver [AR 91, 105], nor did he later testify to receipt of such erroneous information at the hearing other than the erroneous receipt of checks.  However, "[t]he issuance of miscalculated benefits checks, on its own, does not constitute 'erroneous information.'"  Van Haften v. Shalala, 1995 WL 599070, 3 (N.D. Ill.), citing Broeckert v. Sullivan, 751 F.Supp. 1361, 1363 (W.D. Wis. 990).

The plaintiff apparently also testified at the first hearing, the transcript of which is not available, that he was told that he "'could be entitled to continued benefits up to 36 months.'"  [AR 208.]  This explanation also was not advanced as part of the plaintiff's original requests for waiver.  The plaintiff points to language in the Disability Determination Rationale as corroboration:  "Your benefits can be reinstated under the provisions of the extended period of disability guidelines which allows reinstatement of benefits if a

person stops working within 36 months after the end of the trial work period." [AR 190.] Clearly, the referenced section does not indicate that the plaintiff was entitled to benefits for thirty-six months.

The plaintiff further notes that the ALJ did not find that the plaintiff made an incorrect statement or failed to provide needed information but rather that the plaintiff "could have been expected to know" that the Administration made a mistake. [Joint Stipulation at 11-12; AR 12.] The plaintiff contends that such an analysis is faulty. The plaintiff argues that the "without fault" analysis "must look to the circumstances surrounding the overpayment while the claimant stood on the seaward side of the shore . . ." citing 20 C.F.R. § 404.510(g). Section 404.510(g) of 20 C.F.R. provides that an individual is without fault when the overpayment was due, _inter alia_, to "[t]he continued issuance of benefit checks to him after he sent notice to the Administration of the event which caused or should have caused the deductions provided that such continued issuance of checks led him to believe in good faith that he was entitled to checks subsequently received". That section is not applicable. The plaintiff's overpayment is not a deduction overpayment[6] but an

_____

[6] A deduction overpayment is a payment which is incorrect because an individual receiving retirement benefits or auxiliary benefits earned in excess of the allowable amount. A deduction overpayment can also occur in the case of a wife or husband or widow or widower under retirement age receiving mother's or father's benefits, if she or he did not have in her or his care a child of the beneficiary or deceased beneficiary who is entitled to receive child's benefits. The overpaid individual will be found without fault in cases of such deduction overpayments if it is shown that failure to report the excess earnings or acceptance of the overpayment was due to one of a list of circumstances described in 20 C.F.R. § 404.510. _See_ 42 U.S.C.A. § 403(b), (c), and (d); _see also_ 20 C.F.R. § 404.304(b); _see also_ 20 C.F.R. §§ 404.330, 404.331, 404.333; 20 C.F.R. §§ 404.335, 404.336, 404.338; 20 C.F.R. §§ 404.339, 404.340, 404.342; 20 C.F.R. §§

entitlement overpayment.[7]  <u>Valente v. Secretary of Health and Human Services</u>, 733 F.2d 1037, 1044 n.9 (2d Cir. 1984).

The plaintiff further argues that "[t]he 'could have known' standard eviscerates a scienter requirement found in the statute relieving an innocent claimant from an overpayment that occurred as a result of administrative neglect."  The plaintiff urges that "[t]he court should not accept a construction of 'could' have known that eviscerates any scienter and reasonableness component."  [Joint Stipulation at 12.]

However, the "could have been expected to know" standard in no way eviscerates a scienter and reasonableness standard.  To the contrary, it emphasizes the fact that a determination of fault rests upon consideration of whether a reasonable person in the same circumstances as the plaintiff could have been expected to know that the payments received were incorrect.  In this case, the ALJ noted that the plaintiff:

"was a young, adult, English-speaking man of at least average intelligence, with a college education and no mental disabilities, at the time the overpayment occurred.  Given these factors, he would not be expected to have any particular difficulty understanding the notices sent to him or the information provided to him by SSA.

_____

404.370, 404.373; <u>see</u> <u>also</u> 20 C.F.R. §§ 404.415, 404.416, 404.418.  A deduction due to excess earnings is not applicable in the case of disability insurance beneficiaries.  20 C.F.R. § 404.415(a).

[7] "A benefit payment under title II or title XVIII of the Act to or on behalf of an individual who fails to meet one or more requirements for entitlement to such payment or a benefit payment exceeding the amount to which he is entitled, constitutes an entitlement overpayment."  20 C.F.R. § 404.510a.

1    The trial work period and the effect of work and
2    earnings on benefit entitlement are explained in a booklet
3    that is enclosed with a beneficiary's notice of award, and
4    periodically thereafter, either in person or by way of
5    mailed materials.  The claimant acknowledged at the hearing
6    that he had some understanding of the trial work period, but
7    asserted that he believed in good faith the benefits he
8    continued to receive while working were pursuant to the
9    'complex regulatory scheme' that SSA has for trial work
10   periods.  The undersigned is not persuaded by this argument.
11   The claimant's entitlement to disability benefits was based
12   on his inability to work.  It is not credible that he
13   believed he could continue to receive disability benefits
14   indefinitely while simultaneously working and earning
15   substantial wages."  [AR 12.]

16   Although another ALJ might have found that the plaintiff was
17 without fault, if this ALJ's interpretation of the evidence is a
18 reasonable one, it cannot be disturbed.  Sample v. Schweiker, 694 F.2d
19 639, 642 (9th Cir. 1982)("Where evidence is susceptible of more than
20 one rational interpretation, it is the ALJ's conclusion which must be
21 upheld.")  The ALJ's finding that it is not credible or reasonable
22 that a young, well-educated, professional person believed that he
23 could earn approximately $3,000 a month in regular employment [AR 94]
24 and continue to collect an average family benefit, premised upon an
25 inability to work, of about $1,500 a month [see AR 161] for more than
26 three years after his initial return to work, is a reasonable
27 ///
28 ///

- 17 -

interpretation of the evidence, particularly where, as in this case, the plaintiff had such frequent contacts with the Administration concerning his work activity.[8]

**CONCLUSION**

After careful consideration of the complaint, the joint stipulation of the parties, the transcript of the record, and in accordance with the foregoing discussion, the magistrate judge finds

///

///

///

///

---

[8] The plaintiff has cited two cases involving waiver of overpayments in somewhat similar circumstances. However, both cases can be distinguished. In <u>Frasier v. Harris</u>, 495 F. Supp. 260, 263 (D. Colo. 1980), the Commissioner determined that the plaintiff accepted benefit checks which she should have known were not due to her because "Frasier's awareness of the trial work period should have been sufficient notice that her eligibility had expired after nine months of work." The court found otherwise, noting that "eligibility does not necessarily expire automatically at the end of nine months." However, unlike the plaintiff, Frasier actually earned less than the presumptive "substantial gainful activity" amount. 20 C.F.R. § 404.1574. In <u>Rini v. Harris</u>, 615 F.2d 625, 627 (5th Cir. 1980), the plaintiff was found to be not without fault by the Commissioner because he continued to receive checks following the end of his trial work period. Again, the court found otherwise. However, Rini's pertinent circumstances were quite unlike those of the plaintiff. Rini "was told that he could not make it through high school. He entered high school but failed after a year and a half. Rini subsequently worked at various minimum wage jobs, such as a bellhop, mail clerk and department store checker. In March 1969 he suffered a nervous breakdown, necessitating prolonged hospitalization." Moreover, the Commissioner could not establish, as she had claimed, that Rini was provided a notice when his trial work period would end. The plaintiff, on the other hand, is a college educated professional with no mental impairment who had in fact received notice of the trial work period and the anticipated ending date. The plaintiff, moreover, earned five to six times the presumed "substantial gainful activity" amount. Rini, on the other hand, earned $68.00 in excess of the presumptive amount.

that the decision of the Commissioner is supported by substantial
evidence and that the Commissioner applied the proper legal standards.

### ORDER

IT IS ORDERED that judgment be entered in favor of the
Commissioner and against the plaintiff.

Dated: September 21, 2005


_____/s/_____
JAMES W. MCMAHON
United States Magistrate Judge


_____

_____